**CARROLL vs. COCKEY's Adm'rs.**

APPEAL from *Baltimore* County Court. This was an action of covenant, brought by the appellant against the appellee. At the trial, the plaintiff read in evidence the deed mentioned in the declaration, dated the 18th of July 1788, between *John Cockey*, the defendant's intestate, of the one part, and the plaintiff, of the other part, whereby in consideration of the sum of £3000 current money, the said *Cockey* granted, &c. unto the plaintiff, his heirs and assigns, for ever, all that part of three tracts of land called *Cockey's Trust, Hellmore, & Cockey's Recovery*, situate in *Baltimore* county, which is contained within the metes and bounds, &c. following, to wit, beginning, &c. containing 300¾ acres of land more or less, &c. The deed contained the following covenants: "And whereas there issue out of *Jones's Falls* two races or water courses into that part of said tract of land called *Cockey's Trust*, still remaining unsold, which said races or water courses intersect the

neither A, nor his heirs, &c will at any time hereafter alter, change or divert, the course of the said two races or courses of water, from their present sources, through their present channel, or injure the said waters in their said courses, but that the same shall flow freely and uninterruptedly through their present channels, until they intersect the said S 3 deg E 359 perch line, except such part thereof as may be necessary to water the meadows of the said A in his lands; and that B shall have free access, with or without workmen, to the sources of the said races, to increase the streams of water, or to do any other matter or thing to them that he may find necessary for their improvement: and that A shall and will at all times hereafter keep the said races or water courses, proceeding from the southwestern most part of the tract called C, in good order and repair, through that tract, until it intersects the said S 3 deg. E 359 perch line"—*Held*, that upon a construction of the whole covenant taken together, the intention of the parties was, that A should permit the water to flow through certain channels over his land, as designated in the covenant for the benefit of B, and that if the water did, at the date of the covenant, flow through those channels or races, A was bound to keep them in such order and repair, as that the water might always after continue to flow as freely as at that time; but that if the water did not and could not come into and flow through the upper race or channel at the date of the covenant, then A was not bound to deepen or widen the race for the purpose of conducting the water to the land purchased by B.

above mentioned S 3½° E 359 perch line, one of which said races lays northwesterly about 30 perches from the end of the said S 3½° E 359 perch line, the other near the S westermost part of said *Cockey's Trust:* And whereas it is agreed by and between the said parties to these presents, that the said *Carroll,* his heirs, &c. shall have the full benefit of the said two races or water courses, as soon as the same shall intersect the said S 3½° E 359 perch line, and that the said *Cockey,* his heirs, &c. shall not at any time hereafter alter, change or divert, the course of either of the said two races or courses of water, out of his land, by any other ways or channels than those now laid out through the said S 3½° E 359 perch line. And the said *Cockey* for himself, &c. doth hereby covenant, &c. to and with the said *Carroll,* his heirs, &c. that he the said *Carroll,* his heirs, &c. shall have the full and free use and entire benefit of the said two races or water courses, as soon as they intersect the said S 3½° E 359 perch line, and that neither he the said *Cockey,* his heirs, &c. will at any time hereafter alter, change or divert, the course of the said races or water courses, from their present sources through their present channel, or injure the said waters in their said courses; but that the same shall flow freely and uninterruptedly through their present channels, until they intersect the said S 3½° E 359 perch line, except such part thereof as may be necessary to water the meadows of the said *Cockey,* his heirs, &c. in the said three tracts of land; and the said *Carroll,* his heirs, &c. shall have free access, with or without workmen, to the sources of the said races, to increase the streams of water, or to do any other matter or thing to them that he the said *Carroll,* his heirs, &c. may find necessary for their improvement. And the said *Cockey,* for himself, &c. doth hereby further covenant, &c. to and with the said *Carroll,* his heirs, &c. and to and with every of them, by these presents, that he the said *Cockey,* his heirs and assigns, shall and will, at all times hereafter, keep the said races or water courses, proceeding from the southwesternmost part of the said *Cockey's Trust,* in good order and repair through the said tract, until it intersects the said S 3½° E 359 perch line, and that he the said *Cockey* now is the true and lawful owner of the said part of the said three tracts of land," &c. The plaintiff also gave in evidence the plots and explanations returned

in this cause, (the land having been surveyed under a war-
rant for that purpose,) and that the locations made by him
on said plots were correct.   He also gave in evidence, that
from the time of making the said deed, to the present
time, the water hath not flowed in any manner, nor at any
time, along the said race or water course issuing out of
*Jones's Falls* at the point B, as designated on the plots;
and that the said *John Cockey* in his life-time, and before
the bringing of this suit, was frequently requested, on the
part of the plaintiff, to cause the said water to run along
the said race, as designated on the plots, up to the S $3\frac{1}{2}°$
E 359 perches line in the said deed mentioned, but always
refused or omitted so to do.   The defendants then gave in
evidence, that at the time of making the said deed, the
water of *Jones's Falls* did not flow along the said race is-
suing out as aforesaid at B, nor along any part thereof, and
that the said water could not so flow, as the said race was,
at the time of making the said deed, and then prayed the
opinion of the court, and their direction to the jury, that
according to the true construction of the covenant in the
said deed, *John Cockey* was bound to leave the races, men-
tioned in said covenant and declaration, in the situation
they were at the time the covenant was made, and should
keep them in repair in the situation they then were, or in
which the plaintiff might afterwards place them; and that
if the jury should be of opinion that said *Cockey* had done
no act to obstruct, alter, change or divert, the course of the
water in either of said races, since the making of the
covenant, and that the water in the upper race could not
and did not flow along said race to the divisional line,
without any act done or permitted by said *Cockey* to pre-
vent it, and that the said *Cockey* at all times allowed and
permitted the plaintiff, with or without hands, to enter on
his lands, and to widen, deepen or increase, the said
streams, for their improvement, or to do any other matter
or thing to them that the plaintiff might deem necessary,
that then the plaintiff was not entitled to recover in this
action. And the Court, [*Nicholson,* Ch. J.] was of opinion,
and so directed the jury, that upon a construction of the
whole covenant taken together, the intention of the parties
was, that *Cockey* should permit the water to flow through
certain channels over his land, as designated in the covenant,
for the benefit of *Carroll,* and that if the water did, at

the date of the covenant, flow through those channels or races, *Cockey* was bound to keep them in such order and repair as that the water might always after continue to flow as freely as at that time; but that if the water did not and could not come into and flow through the upper race or channel, at the date of the covenant, then *Cockey* was not bound to deepen or widen the race for the purpose of conducting the water to the land purchased by *Carroll.* The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, EARLE, and JOHNSON, J. by

*Harper,* for the Appellant; and by
*Winder,* for the Appellee.

JUDGMENT AFFIRMED.